USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/15/2025

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

Wenxin Liang,

                    *Petitioner*,

            -against-

JUDITH ALMODOVAR, in her official capacity
as Field Office Director of Enforcement and
Removal Operations, New York City, Immigration
and Customs Enforcement; KRISTI NOEM, in her
official capacity as Secretary of the U.S.
Department of Homeland Security; PAMELA
BONDI, in her official capacity as Attorney
General of the United States; EXECUTIVE
OFFICE FOR IMMIGRATION REVIEW,

                    *Respondents*.

---

1:25-cv-09322-MKV
<u>OPINION AND ORDER</u>

MARY KAY VYSKOCIL, United States District Judge:

This case concerns the detention of a Chinese national who entered the country unlawfully. As elaborated in detail below, he was apprehended near the border in California, released on his own recognizance, and instructed to appear for removal proceedings in New York. He admitted removability and defensively sought asylum. Recently, following an examination by an immigration officer, he was detained. The dispute before the Court is whether he was entitled to a bond hearing separate and apart from the examination he had just undergone.

## **BACKGROUND**

On November 7, 2025, Wenxin Liang (the "Petitioner"), proceeding through counsel, filed a petition for habeas corpus under 28 U.S.C. § 2241 (the "Petition"). The Court on November 11, 2025, issued an Order to Show Cause directing Judith Almodovar, Kristi Noem, Pamela Bondi, and the Executive Office for Immigration Review (together, the "Respondents" or the "Government") to show cause by November 17, 2025, why the Petition should not be granted.

1

[ECF No. 3]. Petitioner and Respondents (together, the "Parties") sought an extension of time to submit briefing, [ECF No. 5], which the Court granted, [ECF No. 6].

Respondents filed an opposition brief, [ECF No. 10] (the "Opposition" or "Opp."), accompanied by a return, [ECF No. 8] (the "Return"), which attached several exhibits,[1] and the declaration of Immigration and Customs Enforcement ("ICE") Acting Supervisory Detention and Deportation Officer Mincheol So., [ECF No. 9] (the "So Declaration" or "Decl."). Petitioner filed a reply, [ECF No. 11] (the "Reply").

Petitioner, a Chinese national, entered the United States at or near Tecate, California, on or about October 30, 2023. *See* NTA. He did not enter at a time and place prescribed by the Secretary of Homeland Security,[2] was not inspected upon arrival, and was not admitted or paroled into the country. *See id.* Shortly thereafter, he was encountered by a Border Patrol Agent, and, since by his own admission his presence in the United States was not lawful, he was arrested (the "2023 Arrest"). *See* Decl. ¶ 4. Thereafter, United States Border Patrol ("USBP") directed Petitioner to appear for removal proceedings against him. *See* NTA (citing Section 212(a)(6)(A)(i) of the Immigration and Nationality Act,[3] which provides that "[a]n alien present in the United States

---

[1] *See* Return, Exs. 1 (Warrant for Arrest of Alien (Form I-200) dated November 1, 2023) (the "2023 Warrant")); 2 (Notice of Custody Determination (DHS Form I-286) dated November 1, 2023 (the "Notice of Custody Determination" or "NCD")); 3 (Notice to Appear (DHS Form I-862) dated November 1, 2023 (the "Notice to Appear" or "NTA")); 4 (Order of Release on Recognizance (Form I-220A) dated November 1, 2023 (the "Order of Release on Recognizance" or "ROR"); 5 (Warrant for Arrest of Alien (Form I-200) dated November 7, 2025 (the "2025 Warrant")); 6 (Record of Deportable/Inadmissible Alien (Form I-213) dated November 7, 2025 (the "Record of Deportable/Inadmissible Alien" or "RD/IA")); 7 (cancelled Order of Release on Recognizance (Form I-220A) signed on November 24, 2025 (the "Cancelled ROR")).

[2] "Although the relevant statutory sections refer to the Attorney General, the Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (2002), transferred all immigration enforcement and administrative functions vested in the Attorney General, with few exceptions, to the Secretary of Homeland Security." Opp. at 5 n.1.

[3] Section 212 of the Immigration and Nationality Act (the "INA") is contained in the United States Code at Title 8, Section 1182. Henceforth, the Court's citations are to the United States Code.

without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible," 8 U.S.C. § 1182(a)(6)(A)(i).

Apparently after having already been detained and served with the Notice to Appear, *see* Decl. ¶ 6, Petitioner was served with a warrant for his arrest under United States Code, Title 8, Section 1226.  *See* 2023 Warrant.[4]  Nevertheless, Petitioner was immediately released on his own recognizance, *see* NCD; ROR, a form of conditional parole authorized by Title 8, United States Code, Section 1226(a)(2)(B), *see* Opp. at 21 n.8.[5]

The NTA, issued in San Diego, California, directed petitioner to appear before an immigration judge (an "IJ") at 26 Federal Plaza, New York, NY ("26 Federal Plaza"), in a little under four months.  *See* NTA.  Shortly thereafter, the NTA was filed, commencing removal proceedings against Petitioner, *see* Decl. ¶ 7.  The IJ in New York thrice rescheduled Petitioner's initial hearing, which was ultimately set for April 25, 2028.  *See* Decl. ¶¶ 9, 10, 13.  In the interim, Petitioner traveled from California to New York, where he reported to ICE at 26 Federal Plaza on Christmas Day 2023.  *See* Decl. ¶ 8.  In connection with his removal proceedings, Petitioner filed a defensive asylum application and written pleadings conceding his removability under Title 8, United States Code, Section 1182.  *See* Decl. ¶¶ 11, 12; Petition ¶ 46.

On November 7, 2025, Petitioner reported to ICE at 26 Federal Plaza for a check-in, where, following an examination by immigration officers, he was taken into custody (the "2025 Arrest"). *See* Decl. ¶ 14; RD/IA at 2.  The form cancelling Petitioner's ROR was not executed until November 24, 2025, *see* Decl. ¶ 14; Cancelled ROR, but a new arrest warrant was issued during

---

[4] The 2023 Warrant was directed "[t]o any officer delegated authority pursuant to [Title 8, United States Code, Section 1357,]" *see* 2023 Warrant, which lays out "[p]owers of immigration officers and employees[,]" including powers to make arrests with or without a warrant, *see* 8 U.S.C. § 1357.

[5] The Court notes that the form compiling Petitioner's immigration history, dated November 7, 2025, indicates that his release on recognizance was based upon "humanitarian reasons and a lack of detention space."  RD/IA at 2.

the 2025 Arrest. *See* Decl. ¶ 15; 2025 Warrant. Unlike the 2023 Warrant, the 2025 Warrant did not clearly specify the authority under which Petitioner was taken into custody, but it was directed to "[a]ny immigration officer authorized pursuant to [Title 8, United States Code, Sections 1226 and 1357], and part 287 of title 8, Code of Federal Regulations, to serve warrants of arrest for immigration violations[.]"[6] 2025 Warrant. Petitioner declined to participate in Incentivized Voluntary Departure, instead electing to remain in custody. *See* RD/IA at 3.

## DISCUSSION

### I.   The Statutes

By way of overview, this dispute concerns two statutory provisions. *See* 8 U.S.C. §§ 1225 ("Section 1225"), 1226 ("Section 1226"). As relevant here, Section 1225(b)(2)(A) provides that, "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien ***shall*** be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A) (emphasis added) (cross-referencing the provision governing "[r]emoval proceedings," 8 U.S.C. § 1229a). An applicant for admission is "[a]n alien present in the United States who has not been admitted or who arrives in the United States . . . ." 8 U.S.C. § 1225(a)(1). Admission means "the lawful entry of the alien into the United States after inspection and

---

[6] Title 8, Code of Federal Regulations, Part 287, implements, *inter alia*, Title 8, United States Code, Sections 1225, 1226, and 1357. *See* 8 C.F.R. Part 287. Other district courts, apparently urged by the parties before them in a way that the Court here is not, have decided that the use of a warrant, particularly one citing to Section 1226, is "strong evidence that petitioner may be detained, if at all, only pursuant to section 1226(a)[,]" because Section 1225(b) contains no warrant requirement. *Lepe v. Andrews*, 2025 WL 2716910, at *8 (E.D. Cal. Sept. 23, 2025). This result has been reached over arguments that "the use of a warrant is merely paperwork [which] does not change the statutory basis for detention[,]" *id.* (quotation omitted, alteration original), and that the warrant form in question "also cites 8 C.F.R. 287.3, which governs the [d]isposition of cases of aliens arrested without warrant and is associated with Section 1225(b)[,]" *Rodriguez-Acurio v. Almodovar*, 2025 WL 3314420, at *25 (E.D.N.Y. Nov. 28, 2025) (quotation omitted, alteration original). Not least because it has not been asked to do so by the Petitioner, the Court here declines to impose extra-statutory process requirements on the Government because the Government chose to issue a warrant when it seems no warrant was required.

authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). In other words, the plain text of Section 1225(b)(2)(A) provides for mandatory detention of an alien, such as Petitioner, who is present in the United States, has not been admitted, and is not clearly and beyond a doubt entitled to be admitted. *See Chen v. Almodovar, et al.*, 2025 WL 3484855 (S.D.N.Y. Dec. 4, 2025).

Section 1226(a), in turn, provides that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). "Except as provided in subsection (c), the Attorney General[,]" *id.* (citing a provision governing "detention of criminal aliens," 8 U.S.C. § 1226(c) (cleaned up)), "may continue to detain the arrested alien," 8 U.S.C. § 1226(a)(1), or else "may release the alien on" certain conditions, 8 U.S.C. § 1226(a)(2).

## II.    **The Statutory Process**

Petitioner's essential argument is that the Executive Branch may not "toggle between statutory schemes based on administrative convenience, resource constraints, or litigation strategy[,]" Reply at 1, such that if he was initially detained and released under Section 1226, the Government could not later have detained him under Section 1225. This is wrong, particularly in the immigration context. *See United States v. Texas*, 599 U.S. 670, 678–79 (2023) ("Under Article II, the Executive Branch possesses authority to decide how to prioritize and how aggressively to pursue legal actions against defendants who violate the law." (quotation omitted)). Instead, "[a]gencies are free to change their existing policies as long as they provide a reasoned explanation for the change." *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221 (2016).

Nearly thirty years ago, in connection with the promulgation of an interim rule implementing the Illegal Immigration Reform and Immigrant Responsibility Act of 1998 (the "IIRIRA"), then-Immigration and Naturalization Service noted that "[d]espite being applicants for

admission, aliens who [were] present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) [would] be eligible for bond and bond redetermination." 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997). This was apparently an interpretative choice made in response to the IIRIRA's then-recent reclassification of "alien[s] present in the United States who ha[d] not been admitted" as "applicant[s] for admission." 8 U.S.C. § 1225(a)(1) (1996). In other words, despite the legislative text, such aliens would not be treated by law enforcement as subject to the mandatory detention provision of Section 1225(b)(2)(A) pending removal proceedings.

This changed shortly after the second election of President Trump. In July of 2025, according to a leaked memorandum, ICE issued guidance to its employees instructing them that, "[e]ffective immediately, it is the position of DHS that [applicants for admission] are subject to detention under [Section 1225(b)] and may not be released from ICE custody except by [Section 1182(d)(5)] parole." Memorandum from ICE to All ICE Employees (Jul. 8, 2025) (the "ICE Memo") at 1.[7] The ICE Memo clarified that "[t]his interpretation does not impose an affirmative requirement on ICE to immediately identify and arrest all aliens who may be subject to [Section 1225] detention." *Id.* at 2. "Rather, the custody provisions [of Section 1225] are best understood as prohibitions on release once an alien enters ICE custody upon initial arrest or re-detention." *Id.*

As subsequently explained in a reasoned opinion issued by the Board of Immigration Appeals ("BIA"), the practice of "conduct[ing] bond hearings for aliens who entered the United States without inspection[,]" *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 225 n.6 (BIA 2025), was "not supported by the plain language or any reasonable interpretation of the INA[,]" *id.* at 228.

---

[7]    *Available    at*    https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission.

For all the reasons laid out in this Court's opinion in *Chen*, 2025 WL 3484855, the Court is in the exercise of its "'independent judgment' . . . persuaded by the BIA's conclusion" on this issue. *Yupangui-Yunga v. Bondi*, 157 F.4th 512, 520 (2d Cir. 2025) (quoting *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024)); *see also Mejia Olalde v. Noem*, 2025 WL 3131942, at *5 (E.D. Mo. Nov. 10, 2025) ("The interim rulemaking" exempting applicants for admission already in the country from mandatory detention "offered no interpretation of the statute to justify that nontextual policy, so the Court accords it little to no weight. The plain meaning prevails.").

The Court's determination that Section 1225 applies to both aliens at entry and aliens who entered without "be[ing] admitted[,]" 8 U.S.C. § 1225(a)(1), is bolstered by the Government's argument that this reading "maintains the dichotomy prescribed by Congress in the IIRIRA by distinguishing between those who effectuate a lawful entry (even if later found removable) . . . and those who illegally entered . . . ." Opp. at 12–13. The Court recognizes that *dicta* in *Jennings v. Rodriguez* refers to the application of Section 1225 "at the Nation's borders and ports of entry[.]" 583 U.S. 281, 287. But Petitioner misquotes this portion of *Jennings* to suggest that Section 1225 applies *only* at the border. *See* Reply at 2 (quoting *Jennings*, 583 U.S. at 287 as saying "§ 1225(b) governs individuals at the Nation's borders and ports of entry, where admissibility must be determined," which *Jennings* nowhere says).

Instead, *Jennings* noted that the "process of deci[ding]" "who may enter the country and . . . who may stay here after entering . . . generally begins at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible[.]" *Id.* at 286–87. There, at the border, "[a]pplicants for admission must be inspected by immigration officers to ensure that they may be admitted into the country consistent with U.S. immigration law." *Id.* at 287 (quotation omitted). When an alien simply skips this step, such that

he "is present in this country but has not been admitted," he remains "an applicant for admission." *Id.* (quotation omitted).

The point is that, by Congressional design, such an alien "is treated as an applicant for admission," *id.* (quotation omitted), whom "U.S. immigration law authorizes the Government to detain . . . under §§ 1225(b)(1) and (b)(2)," *id.* at 289, as though he were still at the border.[8]   This remains the case no matter how far into the interior the alien makes his way, and even if, as here, he was permitted to chart that course by immigration officials under a prior Administration who had just made a preliminary finding that he was inadmissible, *see* NTA.[9]

The Court declines adopt Petitioner's argument that the prior Administration's decision to catch and then release Petitioner into the interior under Section 1226 means that the current Administration has "relinquished the authority[,]" Reply at 2, to apply Section 1225 according to its plain terms.  Petitioner's conditional parole under Section 1226(a)(2)(B) in 2023 does not, for example, require that any subsequent detention occur under 1226.  *See Chen*, 2025 WL 3484855, at *8.  Nor does the fact that Petitioner is now in custody under Section 1225(b)(2)(A) entitle the Court to unilaterally "treat[] Petitioner's initial release" under 1226(a)(2)(B) as having actually

---

[8] That "U.S. immigration law . . . also authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c)[,]" *id.*, does not change the Court's reading of Section 1225.  Nor does the subsequent amendment of Section 1226 by the Laken Riley Act (which, the Court notes, occurred prior to the change in interpretative position with respect to the application of Section 1225 to aliens present in the country without having been admitted).  To the extent that any redundancy exists—and, to be clear, the Court is not convinced on this score, *see* Opp. at 13–14 (collecting cases that address this question); *see also Chen*, 2025 WL 3484855, at *7; *compare* 1226(a) (providing that "an alien may be arrested and detained" "[o]n a warrant") *with* 1225(b)(2)(A) (requiring detention after certain findings are made by an "examining immigration officer" during a warrantless encounter)—it "is not a license to rewrite or eviscerate another portion of the statute contrary to its text." *Barton v. Barr*, 590 U.S. 222, 239 (2020) (interpreting other provisions of the INA).

[9] The Court notes in this connection that "[i]f Congress meant to say that an alien no longer is 'seeking admission' after some amount of time in the United States, Congress knew how to do so."  *Olalde* 2025 WL 3131942, at *4 (E.D. Mo. Nov. 10, 2025) (referring to Section 1225(b)(1)(A)(iii)).

been granted under Section 1182(d)(5)(A),[10] *see Savane*, 2025 WL 2774452, at *7, in order to impose extra-statutory process requirements on the Government.

Petitioner—who entered the country unlawfully, *see* NTA, has never been admitted, *see* RD/IA, and, though he is seeking lawful status, *see* Decl. ¶ 11, was "determine[d]" by an "examining immigration officer" to be "not clearly and beyond a doubt entitled to be admitted," 8 U.S.C. § 1225(b)(2)(A); *see* 2025 Warrant; RD/IA at 2—is properly in custody under Section 1225(b)(2)(A).[11] *See Chen*, 2025 WL 3484855, at *6. And Section 1225(b)(2) "says [nothing] whatsoever about bond hearings." *Jennings*, 583 U.S. at 297. Accordingly, Petitioner has received statutory process. The next question is whether he was due more process under the Constitution. He was not.

### III. The Process Due

"Courts have long recognized the power to expel or exclude aliens as a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control." *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 210 (1953). As a result, "an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application[.]" *Landon v. Plasencia*, 459 U.S. 21, 32 (1982).

Notwithstanding the fact that Petitioner did indeed cross into the United States frontier, or that he was thereafter permitted to go deeper into "our country and begin[] to develop the ties that go with permanent residence[,]" *id.*, he did not effectuate a "lawful entry," 8 U.S.C. § 1101(a)(13)(A) (defining "admission"), and so remains "on the threshold of initial entry," *Mezei*,

---

[10] Section 1182(d)(5)(A), which provides for parole "for urgent humanitarian reasons or significant public benefit," 8 U.S.C. § 1182(d)(5)(A), "is the sole statutory authority under which a noncitizen subject to § 1225(b)(2)(A) may be paroled[.]" *Savane v. Francis*, 2025 WL 2774452, at *7 (S.D.N.Y. Sept. 28, 2025).

[11] For this reason, the Court need not address the Parties' arguments regarding administrative exhaustion under Section 1226(a). *See* Opp. at 21–22; Reply at 7–8.

345 U.S. at 212, as a matter of law. *See Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 (2020) ("[A]n alien who tries to enter the country illegally is treated as an applicant for admission, . . . and an alien who is detained shortly after unlawful entry cannot be said to have effected an entry[.]" (quotations and citations omitted)); *United States ex rel. Kordic v. Esperdy*, 386 F.2d 232, 235 (2d Cir. 1967) ("A 'parolee,' even though physically in the country, is not regarded as having 'entered' and thus has not acquired the full protection of the Constitution."); *see also Al-Thuraya v. Warden, Orange Cnty. Corr. Facility*, 2025 WL 2858422, at *4 n.2 (S.D.N.Y. Oct. 9, 2025) (recognizing that "parole does not effect an entry for an individual stopped at or near the border."). This is a straightforward application of the "so-called 'entry fiction' by which aliens who have been denied admission to the United States yet are present within its borders are treated, for constitutional purposes, as if stopped at the border." *Mendez Ramirez v. Decker*, 612 F. Supp. 3d 200, 219 (S.D.N.Y. 2020) (quotation omitted)).

Whatever "grace" Congress and the Executive Branch have thus far bestowed upon Petitioner, including not only his initial parole but also his examination by an immigration officer under Section 1225(b)(2)(A) itself, "bestows no additional rights." *Mezei*, 345 U.S. at 215. Accordingly, precedents concerning admitted aliens are inapplicable here. *See Poonjani v. Shanahan*, 319 F. Supp. 3d 644, 648–49 (S.D.N.Y. 2018) (parolee who had been in the United States for years but remained "at the threshold of initial entry for immigration purposes" was not entitled to anything more than statutory process (quotation omitted) (distinguishing *Zadvydas v. Davis*, 533 U.S. 678 (2001) (holding that, for admitted aliens, "[a] statute permitting indefinite detention . . . would raise a serious constitutional problem[,]" *id.* at 690))). This Court is unconvinced that in such a situation "the political branches' authority to legally admit or exclude noncitizens . . . doesn't apply . . . ." *Al-Thuraya*, 2025 WL 2858422, at *4. It is not clear what

other authority the Executive Branch would be exercising in "detain[ing]" Petitioner "for a [removal] proceeding[.]"  8 U.S.C. § 1225(b)(2)(A).

Regardless, even if the Court were presented with the execution of some authority to detain unadmitted aliens to which the entry fiction did not apply, Petitioner does not seek "a bond hearing based on the duration of his detention."  *Al-Thuraya*, 2025 WL 2858422, at *4 (applying *Black v. Decker*, 103 F.4th 133 (2d Cir. 2024) (analyzing Section 1226(c) as applied to admitted alien)). Petitioner has been in custody for a little over a month.  *Compare Black*, 103 F.4th at 150 (2d Cir. 2024) ("[A]ny immigration detention exceeding six months without a bond hearing raises serious due process concerns.").

Accordingly, at least at this time, and probably throughout the pendency of his removal proceedings, Petitioner is not entitled to a bond hearing.  Nor, given that he has received all the process he is due, is he entitled to immediate release.

### **CONCLUSION**

For the foregoing reasons, the Petition is DENIED with prejudice.

**SO ORDERED.**

**Date:   December 15, 2025**
**            New York, NY**

**MARY KAY VYSKOCIL**
**United States District Judge**

11